THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, Plaintiff, *v.* JOHN P. BOLAND and Others, as Members of and Constituting the New York State Labor Relations Board, Defendants.*

Supreme Court, Special Term, New York County, January 28, 1941.

*Proskauer, Rose & Paskus* [*Burton Zorn* of counsel], for the plaintiff.

* Affd., 261 App. Div. 900.

*Daniel Kornblum* [*Daniel Kornblum, Henry Silver* and *Bernard Jaffe,* of counsel], for the defendants.

*John J. Sheehan,* for the Amalgamated Chain Store Grocery Workers, Local 222, C. I. O., intervenor.

*Buitenkant & Cohen,* for the Amalgamated Meat Cutters & Butcher Workmen of North America, Local 342, and Retail Clerks International Protective Association and Local 1505, intervenors.

VALENTE, J.   This is a motion by the plaintiff, the Great Atlantic and Pacific Tea Company, for a temporary injunction restraining the New York State Labor Relations Board from holding certain elections among the plaintiff's employees in order to determine the proper representatives of the employees for the purposes of collective bargaining.

The original complaint sought a declaratory judgment to the effect that the decision of the Labor Board, dated December 21, 1940, which directed the holding of the election sought to be enjoined, was beyond the jurisdiction of the Board and improper for other reasons.   On December 31, 1940, the Board handed down an amended decision which made certain changes in the original decision, and plaintiff thereafter served an amended complaint praying for declaratory judgment that the amended decision was invalid for reasons similar to those urged in plaintiff's attack upon the original decision.

Acting upon a claim by the Amalgamated & Food Store Employees, Local 222, a labor organization affiliated with the United Retail & Wholesale Employees of America, C. I. O., hereinafter referred to as the C. I. O. union, the Labor Board, pursuant to subdivision 3 of section 705 of the New York State Labor Relations Act (Labor Law, §§ 700–716), conducted an investigation concerning the representation of employees working in certain of the plaintiff's stores.   At the hearing various conflicting claims were made.   The C. I. O. union claimed the right to represent all types of employees of the plaintiff, including those working in the meat departments of its various stores.   The Retail Clerks International Protective Association, A. F. of L., and two locals affiliated with it, hereinafter referred to as Retail Clerks unions, also claimed the right to represent the plaintiff's employees, including those working in its meat departments.   The plaintiff likewise contended that the employees of its meat departments did not constitute a separate craft and should not be permitted to vote in a separate election from that held for the other employees.   Locals 342 and 623 of the Amalgamated Meat Cutters & Butcher Workmen of North

America, hereinafter referred to as the Butcher unions, took the position that those working in the plaintiff's meat departments constituted a separate craft and were entitled to decide for themselves whether they wished to vote separately for *their own* bargaining representative or to vote with the other employees for a bargaining representative to represent *all* the plaintiff's employees.

Another controversy before the Board related to the proper geographical unit of representation. The C. I. O. union contended for a geographic unit limited to the plaintiff's stores in the five counties of New York city. The Retail Clerks unions originally asked for a geographical unit coextensive with the plaintiff's Eastern Division within the State of New York but subsequently modified its claim to request a unit composed of Westchester, Nassau and Suffolk counties in addition to the five counties of New York city. Local 623 of the Butcher unions desired a unit limited to the counties of Bronx and New York, while Local 342 of the Butcher unions wanted a unit confined to the counties of Kings, Queens, Nassau and Suffolk. The plaintiff itself asserted that the proper geographic unit was one taking in its entire Eastern Division, viz., the five counties of New York city as well as the counties of Nassau, Suffolk, Westchester, Putnam, Rockland, Orange and part of Dutchess.

The amended decision of the Labor Board contained a finding that those working in the meat department of the plaintiff constituted a separate craft within the meaning of subdivision 2 of section 705 of the New York State Labor Relations Act, and that " the appropriate bargaining unit should at present be confined to the five boroughs of the city of New York." Pursuant to the porvision of subdivision 2 of section 705 of the State statute, that " in any case where the majority of employees of a particular craft shall so decide the Board shall designate such craft as a unit appropriate for the purpose of collective bargaining," the Board directed a preliminary election to be held among those employed in the plaintiff's meat departments within the city of New York for the purpose of determining whether they wished to bargain as a craft separate and distinct from the plaintiff's remaining retail store employees. The Board directed that in the event that the vote was in favor of bargaining as a separate craft, a second election was to be held among the meat department employees to enable them to express their wishes regarding their representation for purposes of collective bargaining. It further directed that if the vote of the meat department employees was against bargaining as a separate and distinct craft, a second election was to be held in which *all*

the plaintiff's employees within the city of New York were to indicate their desires in regard to representation for purposes of collective bargaining.

The plaintiff in its amended complaint seeks a declaratory judgment (1) that the finding of the Board that New York city is the appropriate geographical unit is without evidence to support it, (2) that the holding of the Board that the employees working in plaintiff's meat department constitute a separate craft is likewise without evidence to support it, (3) that no question or controversy concerning the representation of plaintiff's employees existed, and that, therefore, the Board improperly directed the holding of elections, and (4) that the Board has exceeded its jurisdiction in investigating questions or controversies between labor organizations affiliated with the same parent labor organization in violation of the provision of subdivision 3 of section 705 of the New York State Labor Relations Act which reads as follows: " Provided, however, that the Board shall not have authority to investigate any question or controversy between individuals or groups within the same labor organization or between labor organizations affiliated with the same parent labor organization."

Before proceeding to take up these various contentions of the plaintiff it is well to consider to what extent, if at all, an action may be maintained for the purpose of obtaining a declaratory judgment that a decision of the Labor Board directing the holding of elections to determine representation of employees is illegal or improper and, therefore, to be restrained.

The New York State Labor Relations Act (Laws of 1937, chap. 443) contains a separate section providing for judicial review of rulings of the Labor Board. (§ 707.) That section authorizes the maintenance of a judicial proceeding only by a person " aggrieved by a final order of the Board " relating to an " unfair labor practice." Since a representation proceeding under section 705 of the act does not result directly in any order of the Board dealing with unfair labor practices, a certification by the Board as to the proper bargaining representatives of employees may not be judicially reviewed. (*Matter of Wallach's, Inc.,* v. *Boland,* 253 App. Div. 371; affd., 277 N. Y. 345. See, also, *N. L. R. B.* v. *Falk Corp.,* 308 U. S. 453; *Amer. Fed. of Labor* v. *N. L. R. B.,* Id. 401; *N. L. R. B.* v. *Internat'l Brotherhood of Electric Workers,* Id. 413.) It is only after the employer has refused to bargain with the representative certified by the Board and the Board has found his refusal to constitute an unfair labor practice and directed the employer to bargain with the representative certified by it that the institution of a proceeding for judicial review is contemplated by the statute.

This was pointed out by the Appellate Division in this department in *Matter of Wallach's, Inc. (supra,* at pp. 372, 373): " The right to review the determination of the controversy concerning representation will be available to appellant when and if any final order is made by the Board concerning alleged unfair labor practices under section 706. Upon such review the entire record in the proceedings, required to be filed under section 707, will include all such matters as have been presented to the Board in the preliminary and intermediate proceedings under section 705."

Obviously the intent of the statute to permit judicial review only of a final order of the Labor Board in regard to an unfair labor practice would be completely circumvented and nullified if an employer could obtain judicial review of a preliminary proceeding, such as the Board's direction that an election be held for the purpose of determining proper bargaining representatives, by the mere device of instituting an action for a declaratory judgment to determine the validity of the Board's direction. The object of the statutory limitation upon the right to obtain judicial review, viz., to eliminate " the delay caused by judicial review of numerous intermediate steps in a controversy between employer and employee " (*Matter of Wallach's, Inc., supra,* at p. 373), would be defeated. In *Myers v. Bethlehem Shipbuilding Corp.* (303 U. S. 41) the United States Supreme Court held that the procedure for judicial review provided for in the National Labor Relations Act, which is similar to that contained in our State statute, was adequate and that a bill in equity would not lie to enjoin the Labor Board from holding a hearing upon a complaint charging an employer with unfair labor practices. Mr. Justice BRANDEIS, writing for the court, declared that (p. 51) " The rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage."

As I myself had occasion to observe in *Domanick* v. *Triboro Coach Corporation* (N. Y. L. J. Feb. 14, 1940, p. 701): " The act created an administrative body which was to concern itself with the various problems arising out of industrial and labor relations. Courts should not take jurisdiction where such an administrative body exists with power to act in any particular case." Only one case has been called to my attention in which an action for a declaratory judgment was permitted to be maintained against the Labor Board prior to a final order by the latter dealing with an unfair labor practice. In that case (*Bank of Yorktown* v. *Boland,* 280 N. Y. 673) the Board had directed an election among the employees

of a bank, which thereupon instituted suit for a declaratory judgment to the effect that the Board was wholly without power to act in the premises because the New York State Labor Relations Act was unconstitutional and because it did not apply to employees of a bank. The Court of Appeals, on the authority of *Dun & Bradstreet, Inc.*, v. *City of New York* (276 N. Y. 198), held that a good cause of action to obtain declaratory judgment as to the power of the Board in the premises was stated. The case of *Dun & Bradstreet, Inc.*, v. *City of New York* (*supra*), upon which authority this decision was made, had upheld the propriety of an action for a declaratory judgment where the claim was made that a taxing statute of the city of New York was not applicable to the type of transactions engaged in by the plaintiff.

It is only where the constitutionality of the statute pursuant to which the Board is purporting to act or the applicability of that statute to the plaintiff or to the subject-matter is sought to be adjudicated that an action for a declaratory judgment will lie. In such situations the controversy relates to the power of the Board to act at all, and a determination in favor of the plaintiff would render any further proceedings by the Board wholly superfluous. Where, however, the propriety of the Board's action rather than its power to act is in question and examination or consideration of the evidence before it is necessary, there is no authority for the maintenance of an action for a declaratory judgment. As previously observed, the clear intent and purpose of the Legislature would be nullified if actions for declaratory judgment were to be permitted in the latter type of situation.

Applying these principles to the instant case, it appears to be clear that the contentions of the plaintiff, (1) that there was no evidence before the Board of a question or controversy concerning the representation of the plaintiff's employees, (2) that the finding of the Board that New York city was the proper geographical unit was without evidence to support it, and (3) that the Board's determination that the employees working in the meat departments of the plaintiff's stores constitute a separate craft was also unsupported by any evidence, are not properly the subject of an action for a declaratory judgment at this time, but must await the making of a final order by the Board in connection with a claim that plaintiff has been guilty of an unfair labor practice. Consideration of these contentions of the plaintiff would require a careful examination and study of all the proceedings before the Board from their very inception, including the evidence taken at the various hearings held. This is not the kind of situation in which an action for a declaratory judgment may appropriately be maintained.

There remains for consideration the plaintiff's claim that the Board exceeded its jurisdiction in attempting to investigate a question or controversy between members of the same parent labor organization in violation of the express prohibition against such investigation contained in subdivision 3 of section 705 of the statute. Plaintiff points out that a dispute or controversy existed between the Retail Clerks unions of the A. F. of L. and the two locals of the Amalgamated Meat Cutters and Butcher Workmen of North America, also affiliated with the A. F. of L., both as to whether the employees working in the meat departments of plaintiff's stores were a separate craft and should be permitted, if they so desired, to vote separately for bargaining representation, and also as to the proper geographical unit of representation for bargaining purposes. They urge that in determining that the meat workmen constitute a separate craft, in directing an election at which the meat workmen are to be permitted to vote as to whether they wish to bargain separately as a craft, and in determining that New York city is the appropriate geographical unit, the Board has investigated and is continuing to investigate a controversy between A. F. of L. unions.

Assuming that this claim of plaintiff might otherwise possess merit and warrant the institution of an action for a declaratory judgment, it is the court's opinion that a stipulation entered into between the Retail Clerks unions and the Butcher unions, dated January 3, 1941, in effect terminates any controversy within the A. F. of L. which may be said to have existed prior thereto and eliminates all basis for enjoining the holding of the elections directed by the Labor Board. That stipulation expressly states that " there is no jurisdictional dispute between the Amalgamated Meat Cutters and Butcher Workmen of North America and the Retail Clerks International Protective Association, or of any of the locals affiliated thereto." It further provides " that the Retail Clerks Protective Association disclaim any jurisdiction whatsoever over said employees employed by the company as meat cutters and butcher workmen " in connection with the preliminary craft election directed to proceed for the purpose of determining whether or not the butcher workmen wish to bargain as a separate craft. It goes on to state that if the butcher workmen in such preliminary election evidence their desire to be represented as a separate and distinct craft, the Retail Clerks union disclaims any jurisdiction over them and that the Amalgamated Meat Cutters & Butcher Workmen disclaim all jurisdiction over the remaining employees of the company. There is a further provision that if the butcher workmen vote against being represented as a separate craft, the Retail Clerks union and the Amalgamated

Meat Cutters & Butcher Workmen of North America " will constitute themselves a joint council for the purpose of the following . election to determine whether or not the employees of the Company shall decide upon an industrial basis and desire to choose to be represented by such joint council of the American Federation of Labor or the Amalgamated Chain Food Store Employees, Local 222 of New York City, C. I. O." In addition the stipulation creates a joint council consisting of four designated persons to act in the event that the butcher workmen vote against being represented as a separate craft.

The purpose of the statutory prohibition against investigation by the State Labor Board of the controversies between members of the same larger labor organization was to prevent a governmental agency from interfering with internal union matters for which settlement machinery existed within the union or federation itself. In the instant case the only parties affected by or who could properly complain of an investigation by the Labor Board into controversies between them are the Retail Clerks union of the A. F. of L. and the Butcher unions of the A. F. of L. Had these warring unions resolved all controversies and disputes between them during the hearings before the Labor Board and prior to the latter's decisions, there could be no question of a successful attack upon said decisions. The fact that the disputes and controversies between the A. F. of L. unions were settled and resolved subsequent to the Board's decisions should not alter the conclusion reached and enable the plaintiff, who is in no way affected by the controversies, to enjoin elections directed by the Board to be held for the purpose of determining the representation of the company's employees for bargaining purposes. It is to be noted that the amended decision of the Board made express provision for the possibility that the disputes and controversies between the A. F. of L. unions might be resolved and adjusted within a specified period of time. The decision provides that in the event the disputes should not be settled within the time designated the names of all the A. F. of L. unions were to be omitted from the ballot in the second election to be held for either the butcher workmen alone and the other employees alone, or for all the employees together, depending upon the result of the butchers' vote at the preliminary election.

For the reasons indicated the motion for a temporary injunction restraining the holding of the elections ordered by the Board is denied.