Isadore Bookstein, J.
This is an action for a declaratory judgment, wherein plaintiff seeks an injunction pendente lite, restraining the holding of an election by the appropriate employees of the plaintiff to determine the question of whether or not Amalgamated Union, Local 649, U. A. W., A. F. of L., hereinafter called the union, shall represent plaintiff’s employees for the purpose of collective bargaining, which election has been ordered by defendants, hereinafter called the board, to be held at Monticello, New York, on July 20,1956.
The declaratory judgment sought is a decree “ adjudging and decreeing that the defendants are empowered and directed to determine who may participate in an election proceeding with full power and authority to establish rules, regulations and safeguards to assure that in an election the employees’ right to the exercise of full freedom of self organization and designation of bargaining representatives, are free from interference, restraint or coercion, and that in the exercise of such rights, power, and authority, industrial strife and unrest, which are inimical to the public safety, will be avoided ’’.
The board makes a cross motion for an order dismissing the complaint herein, on the ground that this court, in the exercise of judicial discretion, should decline to entertain this action, or in the alternative, for an order dismissing the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action for declaratory judgment.
In order to dispose of the questions posed by plaintiff’s motion and'the board’s cross motion, the history and chronology of events which have culminated in this action, are essential.
Plaintiff is engaged in a business which launders and supplies linens to a large number of hotels in Sullivan County. Most of the hotels operate only on a seasonal basis, to wit, from June 1 to shortly after Labor Day. Only one, serviced by plaintiff, operates on a year round basis. During the winter months, plaintiff maintains a mere skeleton force of about 15 employees to service the one hotel which is open all year and which utilizes the services of plaintiff. At the close of the summer season, the great majority of plaintiff’s employees terminate their work for plaintiff, under a leave of absence arrangement, until the opening of the following summer season, *580 when they return to work for plaintiff. The total number of production employees in the summer is about 75.
In December, 1955, while plaintiff was operating with its skeleton force of about 15 employees, to service the one hotel aforesaid, the union filed a petition with the board for an election, to have it certified as the bargaining agent for plaintiff’s employees. The petition was opposed by plaintiff, who did not oppose an election of its employees. It opposed an election to be participated in by the skeleton force only, rather than by its full complement of employees. The board rendered no decision on that petition until July 3, 1956, when it sustained plaintiff’s position and ordered an election to be held on July 20, 1956, to be participated in by the full complement of plaintiff’s appropriate employees.
In the meantime and pending the decision of the board, plaintiff’s employees struck, allegedly at the instigation of the union. Plaintiff’s place of business was picketed and the picket signs bore the name of the union. Plaintiff complained that the picketing was unlawful, in that it was mass picketing; that it was violent and untruthful; and coercive, to coerce plaintiff to recognize the union, as bargaining agent of the employees of plaintiff, despite the fact that the board had not yet determined the proceeding instituted before it, for its certification.
In this situation, plaintiff brought an action against the union to restrain its alleged unlawful picketing. It applied for and obtained on due notice, an order to show cause why a temporary injunction should not be granted against the union, returnable at Special Term on July 13, 1956, which order to show cause, stayed the alleged unlawful acts of the union, pending the hearing and determination of the question of whether or not a temporary injunction should be granted.
On the same day when such order to show cause was granted, the board made its decision, sustaining plaintiff’s contention as to the employees eligible to vote in an election for a bargaining agent and setting such an election for July 20, 1956.
Plaintiff now seeks to restrain the election thus ordered until the trial and determination of this action.
The order to show cause issued by this court on July 3, 1956, was not served on the union because of the inability to locate the appropriate officers upon whom service is required to be made.
In the existing situation, plaintiff asked the board to cause the union to desist from its alleged unlawful practices and coercion of plaintiff’s employees, as a condition of any election. The board declined to impose any such conditions on the *581 grounds, first that it could not act on the ex parte complaint of plaintiff and, more importantly, on the ground that the State Labor Relations Act (Labor Law, art. 20) conferred upon it no such power, i.e., that the board lacked power to impose any such condition, even if illegal practices and coercion were engaged in by the union.
This brings us then to the crucial question in this action and on plaintiff’s motion and the board’s cross motion.
Surprising as it may seem, it is true, as contended by the board, that while an employer may be guilty of an “ unfair labor practice ”, as defined in the State Labor Relations Act (Labor Law, § 704), no practice, on the part of an employee or a labor organization, no matter how unfair it may appear to be to the average person, constitutes an ‘‘ unfair labor practice ” under the State Labor Relations Act. Hence, the board takes the position that it has no right to impose as a condition of an election, action on its part to require the union to refrain from engaging in practices that are unfair or coercive of the employees of an employer. The board maintains that the relief by way of restraint of unlawful picketing is exclusively the domain of the Supreme Court; that conduct of a representation election is exclusively the domain of the board.
Both contentions are correct but do not necessarily dispose of the issue presented.
The relief sought by plaintiff in its abortive action in the Supreme Court and the contention made by plaintiff here are not identical nor are they in conflict with either of the propositions just stated.
In the Supreme Court, an injunction was sought against illegal picketing. In this action, plaintiff contends that the board does have the power to impose as a condition of granting the union’s request for an election to certify it as bargaining-agent, that the union refrain from such illegal acts, as the Supreme Court has the right and power to restrain by injunction.
Whether or not the board will impose such a condition, is one thing. Whether or not it has the power to do so is quite another.
The board, in support of its contention of lack of such power, cites subdivision 5 of section 706 of the Labor Law which provides, as follows: ‘ ‘ The board shall not require as a condition of taking action or issuing any order under the article, that employees on strike or engaged in any other lawful, concerted activity shall discontinue such strike or such activity ”. (Italics supplied.)
*582 Clearly, this precludes the board from imposing any condition, on an order for a representation election, discontinuing lawful, concerted action by employees.
Since the prohibition is against imposing a condition for discontinuing lawful, concerted action by employees, it seems clear to me that the Legislature imposed no such prohibition against imposing the condition of discontinuing unlawful, concerted action by employees, as a prerequisite to a representation election.
In Florsheim Shoe Store Co. v. Shoe Salesmen’s Union (288 N. Y. 188), the main contention before the board, by the defendant union was that there could not be a free election because of the coercion by the employers of their employees and as a defense to the proceeding, the defendant union charged the employers with an unfair labor practice in that the employers were “ so interfering by coercive and improper measures that it would be unjust to require the holding of an election to determine a representative for collective bargaining, and that a fair election could not be held in view of the conduct of the plaintiffs toward their employees ” (p. 196).
That is precisely the contention made here except here it is the employer who makes the complaint against the union.
“ The alleged illegal activities of the plaintiffs were fully litigated before the Board, in fact, that was practically the entire subject of litigation, approximately 1,600 of the 1,800 pages of the record being devoted to testimony and hearings upon that particular question. The Board found that there was no evidence in the record indicating any activities on the part of plaintiffs subsequent to April, 1939, hostile to the free exercise of their employees of their right freely to select a bargaining representative of their own choosing. Nevertheless, upon evidence presented by plaintiffs to the effect that they would not coerce or intimidate their employees, spy upon them, interfere with the formation of any employee organization, encourage membership in a company union, or discourage membership in any union by discrimination or do any acts which would interfere with, restrain or coerce their employees in the exercise of the rights guaranteed them by the act and would agree that their employees should have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint or coercion of their employers, the Board caused a notice to that effect to be posted as a condition prece *583 dent to the holding of the election, Upon the record as a whole, after giving full weight to the charges and supporting evidence of defendants that, in view of the unfair and coercive conduct of plaintiffs there could be no free and open election, the Board found that there was no circumstance which would interfere with the free exercise of the wishes of plaintiffs’ employees in the election of a collective bargaining agent and the subsequent execution of an employment contract ” (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, supra, pp. 196, 197).
Thus, in the Florsheim case, the board took cognizance of the complaint that there could not be a free election, investigated the complaint and imposed as a condition precedent to the holding of the election, the posting of a notice, that the election would be free from interference, restraint or coercion of employees, by the employers.
Here, too, the plaintiff asked the board to impose as a condition precedent to holding the election, the cessation of alleged coercive measures by the union, which would prevent a free election.
Thus, in the Florsheim case, the board imposed the condition mentioned. Here it says it has no power to do so.
Of course, in the Florsheim ease, the charges of coercion were against the employer, and if true, constituted an unfair labor practice. Hence, the board might well have justified its exercise of power as it did, since it admittedly has the power over unfair labor practices by an employer.
Nevertheless, in the Florsheim case, the so-called unfair labor practice was not before the board in a proceeding under section 706 of the Labor Law. The complaint filed under section 706 of the Labor Law was withdrawn by the defeated union. It refilled such complaint as a defense in a certification proceeding under section 705 of the Labor Law.
Indeed, with reference to such charges, the court in the Florsheim case (supra, pp, 195,196) said: “ the charges related only to the propriety of certifying a collective bargaining agent in the pending proceeding for certification and were, substantially and essentially, the answer of the defendant unions to the petition therefor and so recognized. No complaint was ever issued upon the charges nor was effort seriously made to secure the issuance of any such complaint. * * * There was not even a pretense made by defendants that the charges of unfair labor practice were separate and distinct and separately identified from the proceeding instituted by their rival union for investigation and determination of a collective bargaining agent and the Board so understood the situation ”,
*584 In other words, what the board undertook to do and did was to investigate the charge of coercive conduct in order to determine whether such conduct prevented a free election. Precisely that was sought here by plaintiff.
There the board’s investigation was not of an unfair labor practice charge in an unfair labor charge proceeding under section 706 of the Labor Law but rather an investigation of conduct on the part of the union (which in the case of a union, constitute an unfair labor practice) to determine whether such conduct would prevent a free election.
Here, the employer seeks to have investigated alleged coercive conduct on the part of the employer (which, if true, would is not an unfair labor practice under the Labor Relations Act) in order to determine whether such conduct prevents a free election and to impose, as a condition precedent for holding such election, the cessation of such conduct.
In the former case, the board had no doubt of its power to determine whether the conduct complained of would prevent a free election and to impose the condition of the employers’ refraining from the conduct complained of as a condition precedent to the election.
Here, where the same relief is sought, in reverse, the board says it lacks the power.
Doubtless, the difference springs from the fact that in the former case, the complaint was against an employer, whose conduct complained of, if true, would constitute an unfair labor practice, while here the complaint is against the conduct of a union, which conduct, if true, would not constitute an unfair labor practice.
Assuming that my conclusion that the board had the power to impose the condition requested by the plaintiff is correct, the question still remains as to plaintiff’s right to relief, by the courts, from the board’s refusal of its request.
The authorities are numerous and in unanimity that the board has exclusive jurisdiction of a representation proceeding; that its decision is final and binding on the parties and on the courts and that there is no direct review of its determination in such a proceeding. Its determination in a representation proceeding, if reviewable at all, is reviewable only in an unfair labor practice proceeding, in which the employer fails to comply with an order, to bargain Avith the certified bargaining agent. (See Matter of Levinsohn Corp. [Cloak Union], 299 N. Y. 454; Matter of Wallsch’s Inc. v. Boland, 253 App. Div. 371; Nevins, Inc., v. Boland, 167 Misc. 428; Matter of Almroth v. Boland, 171 Misc. 314.)
*585 Plaintiff is limited, at this time, and in the existing situation, to an action for a declaratory judgment. But such an action will lie against the board only “ where the constitutionality of the statute pursuant to which the Board is purporting to act or the applicability of that statute to the plaintiff or to the subject-matter is sought to be adjudicated ”. (Great Atlantic & Pacific Tea Co. v. Boland, 176 Misc. 258, 263, affd. 261 App. Div. 900.)
The statute has been declared constitutional; its applicability to plaintiff is unquestionable." So also is it unquestionable as to the subject matter.
‘‘ There is a distinction between a total lack of jurisdiction of either the subject-matter of a controversy or of the parties to the controversy on the one hand, and mere erroneous proceedings on the other (Hanley v. Boland, 177 Misc. 973, 977.)
The most that can be claimed here is that the board’s denial of plaintiff’s request on account of lack of power is erroneous. Even if its action is erroneous, an action for a declaratory judgment does not lie.
The only section of the State Labor Relations Act, expressly applicable to the union, or its representatives, for alleged coercion of the employees is section 709, providing as follows: ‘ ‘ Any person * * * who shall in any manner interfere with the free exercise by employees of their right to select representatives in an election directed by the board * * * shall be punished by a fine of not more than five thousand dollars or by imprisonment for not more than one year, or both ”.
That section reinforces this court’s conclusion that the board has the power to impose the condition requested as a preventive measure, which could be more effective to accomplish the legislative scheme of the Labor Relations Act, than a punitive measure, such as section 709 of the Labor Law.
Nowhere in the statute or in the reported decisions is there authority for the courts to dictate what rules the board shall promulgate or what rules it shall invoke governing a representation election.
Reverting to the relief sought by plaintiff, as quoted in the second paragraph of this opinion, no such declaration is necessary, as such declaration was already made by the Legislature in the preamble to the State Labor Relations Act. Whether or not the remainder of the act is deficient in effectuating the policy declared in the preamble is a matter for the consideration of the Legislature and the people and not for the courts.
Motion for a temporary injunction denied; cross motion to dismiss the complaint for insufficiency granted, "without costs.